IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| PAUL R. GREGORY, <br> TDCJ No. 02022541, <br><br> Plaintiff, <br><br> v. <br><br> DENTIST BAUCUM, et al., <br><br> Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Civil Action No. 7:16-cv-00103-BP |

## MEMORANDUM AND OPINION

Before the Court is Defendant William Sexton's Motion for Summary Judgment (ECF No. 31), with Brief and Appendix in Support (ECF No. 32), filed August 7, 2017. The parties consented to have the United States Magistrate Judge conduct all proceedings in this case, up to and including trial and order of final judgment. ECF Nos. 21–22. After considering the pleadings and applicable law, the Court **DENIES** Defendant's Motion for Summary Judgment.

## BACKGROUND

Plaintiff Paul R. Gregory ("Gregory") brings this lawsuit under 42 U.S.C. § 1983 against Defendants John Baucum, D.D.S. ("Baucum"), Nancy Evans, D.D.S. ("Evans"), Tommy Norwood ("Norwood"), and William Sexton ("Sexton"). ECF Nos. 1 at 3, 6 and 29 at 1. He claims deliberate indifference to his medical needs, specifically, the unnecessary disposal of his dentures and denial of new dentures. ECF No. 1 at 3–4.

Gregory is an inmate in custody of the Texas Department of Criminal Justice (TDCJ) and is currently incarcerated in the Allred Unit in Iowa Park, Texas. ECF No. 29 at 1. Baucum and Evans are dentists at the Allred Unit. ECF No. 1 at 3. Norwood is the medical director for the Allred Unit. ECF No. 29 at 1. According to Sexton's brief in his independent motion for summary

1

judgment, Sexton is a correctional officer at the Allred Unit in Iowa Park, Texas. ECF No. 32-2 at 1. According to Gregory's complaint, Gregory encountered Sexton as an intake officer at the Gurney Transfer Facility in Tennessee Colony, Texas. ECF No. 1 at 7.

On October 7, 2015, Gregory went through intake at the TDCJ Gurney Unit. *Id.* On that date, Gregory filled out and signed a form entitled "Correctional Managed Care Intake History and Health Screening" on which he stated that he had the dental complaint that his top dentures were broken. ECF No. 29-2 at 148–49. Gregory claims that, during inventory of Gregory's property at Gurney, Sexton threw away Gregory's dentures, said Gregory did not need them, and threatened to hit Gregory in the mouth. ECF Nos. 1 at 7 and 1-1 at 4, 6. TDCJ then transferred Gregory to the Allred Unit in Iowa Park.

Soon after, on October 9, 2015, Gregory filed a Step 1 Grievance against Officer Sexton. ECF No. 1-1 at 4. In the grievance he noted that "two drops of glue would of fixed [my dentures]. My bottom set was in good shap [sic] and my denture cup was also good." *Id.* TDCJ responded that an investigation was conducted, that there was no evidence to substantiate Gregory's claims, and that no action was warranted. *Id.* at 5. Gregory then filed a Step 2 Grievance on January 12, 2016. *Id.* at 6. TDCJ denied the Step 2 grievance for the reason that Gregory signed to have his dentures disposed of on October 7, 2015, and stating that the Unit Dental Department could aid him in obtaining new dentures. *Id.* at 7.

Gregory alleges that he put in sick call requests on January 20, 2016; March 15, 2016; April 26, 2016; and July 28, 2016; but the medical providers took no action to assist him with his pain and suffering due to the lack of dentures. ECF No. 1 at 8. Gregory further alleges that he saw Baucum on February 11, 2016, and Baucum refused Gregory dentures because of his body mass index (BMI). *Id.* Gregory alleges that he saw Evans on March 16, 2016, and Evans refused Gregory

2

dentures, again because of his BMI. *Id.* Finally, Gregory alleges that he saw Evans again on August 2, 2016, and Evans refused Gregory dentures and a soft food diet. *Id.*

Gregory filed another Step 1 grievance on April 14, 2016, because of the Dental Department's refusal to make him new dentures on February 11, 2016. ECF No. 1-1 at 8. He wrote on his grievance that they were endangering his health and that he was having stomach pain and cramps. *Id.* TDCJ responded again that Gregory had signed for his dentures to be disposed of, and that dentures were not medically necessary as his BMI was within normal limits and his oral cavity was healthy. *Id.* at 9. Gregory filed a Step 2 grievance on May 18, 2016, stating that he did not sign to have his dentures disposed of and he was bringing his dentures with him to be fixed at the Allred Unit. *Id.* at 10. TDCJ denied his Step 2 grievance, stating again that he signed to have his dentures disposing of. *Id.* at 11. He additionally attached to his complaint a request dated July 20, 2016, for a soft food diet, on which he claimed that, because of his lack of dentures, he was having difficulty eating, headaches, gum disfigurement, severe pain, bleeding in his mouth, occasional blood in his stool, and severe stomach pain. *Id.* at 12. The request appears to be signed by Evans. *Id.*

Gregory filed his *pro se* complaint in this Court on August 10, 2016. ECF No. 1. Gregory signed and swore to his complaint under penalty of perjury. *Id.* at 5. Baucum, Evans, and Norwood filed a joint motion for summary judgment on July 7, 2017. ECF No. 29. Sexton moved for summary judgment independently of the other defendants on August 7, 2017. ECF No. 31. Sexton attached as evidence Gregory's grievance records, his medical records, and the section of the Correctional Managed Healthcare Policy Manual concerning dental prosthodontic services. ECF No. 32-3. Gregory filed a Response to Defendant's Motion for Summary Judgment (ECF No. 41) with Brief in support (ECF No. 42), on October 10, 2017. ECF No. 31.

## LEGAL STANDARD

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999). The appropriate inquiry for the Court to make is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To meet this burden, the movant must identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In response, the nonmovant "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255–57). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record to show that there is a genuine issue for trial. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996). The citations to evidence must be specific, and "a party must support each assertion by citing each relevant page of its own or the opposing party's appendix." Local Civil Rules of the Northern District of Texas 56.5(c).

Courts must employ summary judgment cautiously. *Murrell v. Bennett*, 615 F.2d 306, 309 (5th Cir. 1980). In particular, in prisoner *pro se* cases courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Id.* at 311. Courts should take into account that "[i]ndigent prisoners are hampered in their access to the proof necessary to ward off summary judgment." *Id.* at 310.

## ANALYSIS

Sexton argues in his Motion for Summary Judgment that Gregory's claims are conclusory and insufficient to establish deliberate indifference because Gregory's dentures are not medically necessary and there is no evidence that Sexton inferred an excessive risk to Gregory's health and chose to disregard that risk. ECF No. 32-2 at 3–7. Sexton argues that he is entitled to qualified immunity and Eleventh Amendment immunity from Gregory's claims. *Id.* at 7–9. Finally, Sexton argues that Gregory's request for injunctive relief should be denied. *Id.* at 9–11.

**I. Gregory has demonstrated the existence of a genuine issue of material fact on his claim of deliberate indifference.**

Title 42 U.S.C. § 1983 provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, which is proscribed by the Eighth Amendment because its prohibition against cruel and unusual punishment embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Jackson v. Bishop*, 404 F.2d 571, 579 (8th Cir. 1968). Deliberate indifference to medical needs only amounts to an Eighth Amendment violation if the prisoner's needs are serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–104). "A serious medical need is one for which treatment has been

5

recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

"Deliberate indifference is an extremely high standard to meet. . . . [T]he plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346. "Medical records of sick calls, examinations, diagnoses, and medications *may* rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193–95 (5th Cir.1993)) (emphasis added).

To prove an Eighth Amendment violation, a prisoner must (1) "prove objective exposure to a substantial risk of serious harm" and (2) "show that prison officials acted or failed to act with deliberate indifference to that risk." *Gobert*, 463 F.3d at 345–46. Under the second, subjective prong, "a prison official acts with deliberate indifference 'only if (A) he knows that inmates face a substantial risk of serious bodily harm and (B) he disregards that risk by failing to take reasonable measures to abate it.'" *Id.* at 346 (quoting *Farmer v. Brennan*, 511 U.S. 825, 839 (1994)).

In unpublished cases, the United States Court of Appeals for the Fifth Circuit has held that a prisoner's allegation of "difficulty eating, headaches, disfigurement, severe pain, bleeding in his mouth, and blood in his stool" because the prisoner had no dentures was sufficient to state a claim of a serious medical need for dentures. *Vasquez v. Dretke*, 226 Fed. App'x 338, 340 (5th Cir. Mar.

9, 2007) (citations omitted); *see also Williams v. Mason*, 210 Fed. App'x 389, 390 (5th Cir. Dec. 14, 2006) (vacating and remanding dismissal of a deliberate indifference claim that alleged "bleeding gums and digestive difficulty, including diarrhea and cramps" due to lack of dentures); *Huffman v. Linthicum*, 265 Fed. App'x 162, 163 (5th Cir. Feb. 6, 2008) (vacating in part and remanding dismissal of a deliberate indifference claim that alleged "intense physical pain, swollen gums, weight loss, disfigurement and stomach pain" due to lack of dentures). The *Vasquez* court also noted that a doctor had recommended dentures for the prisoner plaintiff. 226 Fed. App'x at 340. Although *Vasquez* was only at the dismissal stage, the court noted that there might ultimately be no Eighth Amendment violation if the defendant doctors were unaware of the plaintiff's symptoms or came to the conclusion, in their medical judgment, that dentures would not have helped him. *Id.*

**A.    Whether Gregory's dentures were a medical necessity under prison policy is not relevant to whether Sexton was deliberately indifferent.**

Sexton argues that he was not deliberately indifferent because Gregory's dentures were not medically necessary. ECF No. 32-2 at 5. In support, he provides the Correctional Managed Healthcare ("CMHC") Policy Manual No.: E-36.4 — Dental Prosthodontic Services, which establishes "mechanisms for determining medically necessary dental prosthetics and [establishes] a process for dental prosthetics tracking, forwarding/storage, and replacement." ECF No. 32-3 at 57–58. Sexton notes that the policy states that a patient who is edentulous (that is, without teeth) must have his nutritional status assessed. ECF Nos. 32-2 at 5 and 32-3 at 58. If his "nutritional status is compromised," then the policy states that "special diets . . . should be considered" and, after a diet are implemented, "dental prostheses . . . may be considered." ECF No. 32-3 at 58. Sexton also claims that the CMHC policy sets out what a normal BMI is, but the policy in fact does not. *See* ECF Nos. 32-2 at 5 and 32-3 at 58–62. Sexton argues that, because medical providers

7

assessed Gregory's BMI as higher than normal after Sexton's allegedly violative conduct, Gregory's nutritional status was not compromised—in other words, he was not having any difficulty eating without dentures. ECF No. 32-2 at 6. Therefore, according to Sexton, Gregory had no medical necessity for dentures and Sexton's conduct was not deliberately indifferent. *Id.*

This argument fails for multiple reasons. First, Gregory is not arguing that his nutritional status was compromised or his BMI was low, but rather that his lack of dentures caused him to suffer from difficulty eating, headaches, gum disfigurement, severe pain, bleeding in his mouth, occasional blood in his stool, and severe stomach pain. ECF Nos. 1-1 at 12 and 41 at 2. Second, deliberate indifference is not established by non-adherence to a policy or by medical necessity but by knowledge of a substantial risk of serious bodily harm and disregard of that risk. *Gobert*, 463 F.3d at 346; *see also Estes v. Rahorst*, 2:11-CV-0023, 2013 WL 5422874, at *8 (N.D. Tex. Sept. 27, 2013) ("The Court notes 'medical necessity' is not a legal term."). The symptoms that Gregory alleges clearly constitute a serious medical need under Fifth Circuit case law, regardless of any CMHC policy. *E.g. Vasquez*, 226 Fed. App'x at 340.

Finally, Gregory's complaint is not that Sexton did not order him new dentures, but that Sexton confiscated and disposed of his old dentures, creating a serious medical risk. ECF No. 1-1 at 4. According to Gregory, his denture cup and bottom denture set was in good shape, and only his top set was broken, which "two drops of glue" would have fixed. ECF No. 1-1 at 4. His prior possession of dentures may indicate, per *Gobert*, that he has a serious medical need for dentures because a doctor previously prescribed them for him, though it is unclear whether they were prescribed for the specific symptoms of which he complains. *See* 463 F.3d at 345 n.12. And though the CMHC policy is not the bellwether for constitutional violations, it does mandate that a "repair/reline of a removable dental prosthesis diagnosed as unserviceable by the treating dentist

8

and that can be made serviceable shall be provided without regard to eligibility requirements." ECF No. 32-3 at 63. Therefore it is possible that, under the policy, Gregory's broken dentures would have been repaired absent Sexton's alleged conduct.

In its essence, Gregory's claim against Sexton is that Gregory was in possession of medically prescribed dentures, Sexton confiscated them over protest from Gregory, and Gregory suffered serious medical consequences predictably resulting from his lack of dentures. A reasonable jury could find that Sexton's conduct was deliberately indifferent to a serious medical need that was either "one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert*, 463 F.3d 339, 345 n.12.

> **B.** **Gregory has demonstrated the existence of a genuine issue of material fact as to whether Sexton knew of and disregarded a substantial risk of serious harm.**

Sexton argues that he could not have known of or disregarded an excessive risk to Gregory's health. ECF No. 32-2 at 6. Sexton claims that Gregory has no evidence that Sexton knew of any risk because Sexton is not Gregory's treating physician. *Id.* Sexton again offers as support that Gregory did not suffer weight loss as a result of his lack of dentures, though that is not the harm Gregory alleges he suffered. *Id.* at 7.

That Sexton is not a physician is not a defense to a deliberate indifference claim, as such a claim is one "for which the need is so apparent that even *laymen* would recognize that care is required." *Gobert*, 463 F.3d at 345 n.12 (emphasis added). The Fifth Circuit has repeatedly held that symptoms like those that Gregory alleges constitute a serious medical need under the deliberate indifference standard. *See, e.g., Vasquez*, 226 Fed. App'x at 340. "The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health' . . . ." *Farmer*,

511 U.S. at 843. A reasonable jury could find that even a layman would recognize that oral and digestive difficulties could result from a lack of dentures.

To limit deliberate indifference claims to treating physicians would miss the point of the deliberate indifference concept and allow a proliferation of constitutional abuses by any non-medical staff at a prison. The Supreme Court has held that deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or *by prison guards* in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05. As the Fifth Circuit noted, "[c]ourts in this circuit and others have found Eighth Amendment violations when prison officials deprive an inmate of a needed medical prosthesis or other device." *Brewster v. Dretke*, 587 F.3d 764, 769 (5th Cir. 2009). In this district, for example, a court denied summary judgment for defendant prison guards where there was a fact issue as to whether they took or withheld a prisoner's wheelchair. *Coker v. Dallas County Jail*, Civ. A. No. 3:05-CV-005-MBH, 2009 WL 1953038, at *23 (N.D. Tex. Feb. 25, 2009), *report and recommendation adopted as modified*, Civ. A. No. 3:05-CV-005-M, 2009 WL 1953037 (N.D. Tex. July 6, 2009) (Ramirez, J.). And the Fifth Circuit and a number of other circuit courts have held that non-medical prison officials can be liable under deliberate indifference if they do not "respond to the legitimate medical needs of a detainee whom [they have] reason to believe is diabetic" by giving proper food or insulin. *See Lolli v. County of Orange*, 351 F.3d 410, 420 (9th Cir. 2003) (citing *Slay v. State of Ala.*, 636 F.2d 1045, 1046–47 (5th Cir. 1981)). As guards can be deliberately indifferent by intentionally interfering with medical needs, the fact finder will determine based on the evidence whether deliberate indifference existed in this case.

## II. Sexton is not entitled to qualified immunity because the *Parratt- Hudson* doctrine does not apply.

The doctrine of qualified immunity protects government officials from suit and "from liability for civil damages under § 1983 insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). Once an official asserts qualified immunity, the burden shifts to the plaintiff to rebut the defense. *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When determining whether an official can claim qualified immunity, courts engage in a two-step analysis. *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016). "First, they assess whether a statutory or constitutional right would have been violated on the facts alleged." *Id*. "Second, they determine whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* The Fifth Circuit requires that the law "so clearly and unambiguously prohibited the violative conduct that '*every* reasonable official would understand that what he is doing violates the law.'" *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (emphasis in original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

Sexton argues that his actions do not amount to a constitutional violation because Gregory's claim is for property confiscation and thus does not constitute a violation under the

*Parratt-Hudson* doctrine. ECF No. 32-2 at 8. Under the *Parratt-Hudson* doctrine, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517 (1984); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). The Fifth Circuit has "emphasize[d] that only alleged violations of procedural due process may be negated by the *Parratt/Hudson* doctrine." *Cozzo v. Tangipahoa Par. Council—President Gov't*, 279 F.3d 273, 290 (5th Cir. 2002) (citing *Davis v. Bayless*, 70 F.3d 367, 375 (5th Cir. 1995)). Gregory is not making a Fourteenth Amendment due process claim against Sexton but an Eighth Amendment deliberate indifference claim. It is thus clear that the *Parratt-Hudson* doctrine does not apply to Gregory's claim. As presented in Gregory's response, and analyzed in Part 1 of this opinion, there is clearly established law that withholding dentures from a prisoner with Gregory's symptoms can be a constitutional violation. *See* ECF Nos. 41 and 42. Sexton is not entitled to qualified immunity.

III. **The Eleventh Amendment bars claims against Sexton to the extent that he is sued in his official capacity but not in his personal capacity.**

Sexton argues that the Eleventh Amendment bars Gregory from recovering damages, and therefore his case should be dismissed. Under the Eleventh Amendment, states may not be sued in federal court unless they unequivocally consent to the suit or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99–100 (1984). This immunity extends to state agencies and, if the relief sought would operate against the state, to state officials. *Id.* at 101. Title 42 U.S.C. § 1983 does not override the States' Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 345 (1979). The Eleventh Amendment thus shields Sexton from liability to the extent that he is sued in his official capacity for damages. But the Eleventh Amendment does not bar the recovery

of damages from state officials sued for violations of § 1983 in their personal capacities, and punitive and compensatory damages awards are common in successful § 1983 suits. *See, e.g., Smith v. Wade*, 461 U.S. 30, 34–35 (1983) (upholding an award of punitive and compensatory damages against prison officials in a § 1983 suit); *Stokes v. Delcambre*, 710 F.2d 1120, 1126 (5th Cir. 1983) (same); *Yul Chu v. Mississippi State Univ.*, 901 F. Supp. 2d 761, 773 (N.D. Miss. 2012), *aff'd*, 592 Fed. App'x 260 (5th Cir. 2014) (explicitly holding that the Eleventh Amendment does not bar monetary relief in a § 1983 suit as any relief would "impact only the individually named Defendants"). Gregory has not stated whether he requests damages from Sexton in his personal capacity, official capacity, or both. *See* ECF No. 1 at 4. His claims for damages are viable insofar as they lie against Sexton personally. Sexton's argument that Eleventh Amendment immunity requires dismissal of this case is incorrect, even if Gregory had only requested monetary damages, which he did not.

## V. Injunctive relief is available to Gregory.

"Under *Ex parte Young*, 'a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law.'" *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004) (citing *Quern*, 440 U.S. at 337); *see also Ex parte Young*, 209 U.S. 123, 159–60 (1908). Injunctive relief is available in deliberate indifference cases. *See Farmer v. Brennan*, 511 U.S. 825, 845 (1994) (noting that prospective injunctive relief is available for the remedying of unsafe, life-threatening conditions); *Ball v. LeBlanc*, 792 F.3d 584, 598 (5th Cir. 2015) (upholding the granting of an injunction, though not its scope, on a prison for exposing inmates to extreme temperatures). The Prison Litigation Reform Act (PLRA) requires that injunctive relief awarded to a prisoner "is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least

intrusive means necessary to correct the violation." *Ball*, 792 F.3d at 598 (citing 18 U.S.C. § 3626(a)(1)(A)).

Sexton argues that Gregory is not entitled to injunctive relief on his claim. ECF No. 29 at 10–12. Sexton additionally argues that this Court should apply the more stringent standard of the preliminary injunction in Gregory's case, particularly the requirement that there must be a substantial likelihood the requesting party will prevail on the merits. ECF No. 29 at 11 (citing, e.g., *Sugarbusters v. Brennan*, 177 F.3d 258, 265 (5th Cir. 1999)). Because Gregory has not requested a preliminary injunction, the Court will not apply that standard.

Injunctive relief is available to Gregory in his case for deliberate indifference. Injunctive relief should not in fact be an uncommon form of relief in cases of deliberate indifference, because it is likely to be the only form of relief that will stop an ongoing constitutional violation. If the fact finder ultimately finds that Sexton was deliberately indifferent to Gregory's medical needs, then the fact finder will determine whether injunctive relief is warranted and what form that injunctive relief should take, subject to the requirements of the PLRA. This Court cannot deny Gregory injunctive relief as a matter of law at the summary judgment stage.

## CONCLUSION

After considering the pleadings and applicable law, the Court **DENIES** Defendant's Motion for Summary Judgment.

It is so **ORDERED** on February 2, 2018.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE