IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| PAUL R. GREGORY, §<br>TDCJ No. 02022541, §<br>§<br>Plaintiff, §<br>§<br>v. §<br>§<br>DENTIST BAUCUM, et al., §<br>§<br>Defendants. § | Civil Action No. 7:16-cv-00103-BP |

## MEMORANDUM AND OPINION

Before the Court is Defendants John Baucum, Nancy Evans, and Tommy Norwood's Motion for Summary Judgment (ECF Nos. 26 and 29), filed July 7, 2017. The parties consented to have the United States Magistrate Judge conduct all proceedings in this case, up to and including trial and order of final judgment. ECF Nos. 21–22. After considering the pleadings and applicable law, the Court **DENIES** Defendants' Motion for Summary Judgment as to Defendants John Baucum and Nancy Evans, and **GRANTS** Defendants' Motion for Summary Judgment as to Defendant Tommy Norwood.

## BACKGROUND

Plaintiff Paul R. Gregory ("Gregory") brings this lawsuit under 42 U.S.C. § 1983 against Defendants John Baucum, D.D.S. ("Baucum"), Nancy Evans, D.D.S. ("Evans"), Tommy Norwood ("Norwood"), and William Sexton ("Sexton"). ECF Nos. 1 at 3, 6 and 29 at 1. He claims deliberate indifference to his medical needs, specifically, the unnecessary disposal of his dentures and denial of new dentures. ECF No. 1 at 3–4.

Gregory is an inmate in custody of the Texas Department of Criminal Justice ("TDCJ") and is currently incarcerated in the Allred Unit in Iowa Park, Texas. ECF No. 29 at 1. Baucum and

Evans are dentists at the Allred Unit. ECF No. 1 at 3. Norwood is the medical director for the Allred Unit. ECF No. 29 at 1. According to Sexton's brief in his independent motion for summary judgment, Sexton is a correctional officer at the Allred Unit in Iowa Park, Texas. ECF No. 32-2 at 1. According to Gregory's complaint, Gregory encountered Sexton as an intake officer at the Gurney Transfer Facility in Tennessee Colony, Texas. ECF No. 1 at 7.

On October 7, 2015, Gregory went through intake at the TDCJ Gurney Unit. *Id.* On that date, Gregory filled out and signed a form entitled "Correctional Managed Care Intake History and Health Screening" on which he made the dental complaint that his top dentures were broken. ECF No. 29-2 at 148–49. Gregory claims that, during inventory of Gregory's property at the Gurney Unit, Sexton threw away Gregory's dentures, said Gregory did not need them, and threatened to hit Gregory in the mouth. ECF Nos. 1 at 7 and 1-1 at 4, 6. TDCJ then transferred Gregory to the Allred Unit in Iowa Park.

Soon after, on October 9, 2015, Gregory filed a Step 1 Grievance against Sexton. ECF No. 1-1 at 4. In the grievance he noted that "two drops of glue would of fixed [my dentures]. My bottom set was in good shap [sic] and my denture cup was also good." *Id.* TDCJ responded that an investigation was conducted, that there was no evidence to substantiate Gregory's claims, and that no action was warranted. *Id.* at 5. Gregory then filed a Step 2 Grievance on January 12, 2016. *Id.* at 6. TDCJ denied the Step 2 grievance for the reason that Gregory signed to have his dentures disposed of on October 7, 2015, and stating that the Unit Dental Department could aid him in obtaining new dentures. *Id.* at 7.

Gregory alleges that he put in sick call requests on January 20, 2016; March 15, 2016; April 26, 2016; and July 28, 2016; but the medical providers took no action to assist him with his pain and suffering due to the lack of dentures. ECF No. 1 at 8. Gregory further alleges that he saw

2

Baucum on February 11, 2016, and Baucum refused Gregory dentures because of his body mass index (BMI). *Id.* Gregory alleges that he saw Evans on March 16, 2016, and Evans refused Gregory dentures, again because of his BMI. *Id.* Finally, Gregory alleges that he saw Evans again on August 2, 2016, and Evans refused Gregory dentures and a soft food diet. *Id.*

Gregory filed another Step 1 grievance on April 14, 2016, because of the Dental Department's refusal to make him new dentures on February 11, 2016. ECF No. 1-1 at 8. He wrote on his grievance that they were endangering his health and that he was having stomach pain and cramps. *Id.* TDCJ responded again that Gregory had signed for his dentures to be disposed of, and that dentures were not medically necessary as his BMI was within normal limits and his oral cavity was healthy. *Id.* at 9. Gregory filed a Step 2 grievance on May 18, 2016, stating that he did not sign to have his dentures disposed of and he was bringing his dentures with him to be fixed at the Allred Unit. *Id.* at 10. TDCJ denied his Step 2 grievance, stating again that he signed to have his dentures disposing of. *Id.* at 11. He additionally attached to his complaint a request dated July 20, 2016, for a soft food diet, on which he claimed that, because of his lack of dentures, he was having difficulty eating, headaches, gum disfigurement, severe pain, bleeding in his mouth, occasional blood in his stool, and severe stomach pain. *Id.* at 12. The request appears to be signed by Evans. *Id.*

Gregory filed his *pro se* complaint in this Court on August 10, 2016. ECF No. 1. Gregory signed and swore to his complaint under penalty of perjury. *Id.* at 5.

Baucum, Evans, and Norwood (collectively, "the Defendants") filed a joint motion for summary judgment. ECF No. 29. They attached the following as evidence. Exhibit A is the affidavit of Benjamin Leeah, M.D., who is the Northern Regional Medical Director for Texas Tech University Health Sciences Center, Correctional Managed Health Care, and testifies that a review

3

of Gregory's medical records and complaint led him to the conclusion that Evans and Baucum "did not demonstrate deliberate indifference." ECF No. 29-1 at 2–6. Exhibit A also includes the Correctional Managed Health Care Policy Manual. *Id.* at 8–17. Attached as Exhibit B are portions of Gregory's medical records, including sick call records, clinic notes, and his intake history and health screening form from October 7, 2015. ECF No. 29-2. Attached as Exhibit C are portions of Gregory's grievance record and related investigations. ECF No. 29-3.

Gregory filed a Response to the Motion for Summary Judgment (ECF No. 41) with Brief in support (ECF No. 42), on October 10, 2017. Sexton moved for summary judgment independently of the other defendants, on August 7, 2017. ECF No. 31.

**LEGAL STANDARD**

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999). The appropriate inquiry for the Court to make is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To meet this burden, the movant must identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In response, the nonmovant "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255–57). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record to show that there is a genuine issue for trial. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996). The citations to evidence must be specific, and "a party must support each assertion by citing each relevant page of its own or the opposing party's appendix." Local Civil Rules of the Northern District of Texas 56.5(c).

Courts must employ summary judgment cautiously. *Murrell v. Bennett*, 615 F.2d 306, 309 (5th Cir. 1980). In particular, in prisoner *pro se* cases courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Id.* at 311. Courts should take into account that "[i]ndigent prisoners are hampered in their access to the proof necessary to ward off summary judgment." *Id.* at 310.

**ANALYSIS**

The Defendants argue in their Motion for Summary Judgment that Gregory's claims are conclusory and do not establish deliberate indifference because there is no evidence that the Defendants inferred an excessive risk to his health and chose to disregard that risk. ECF No. 29 at 3. Additionally, Norwood argues that the claims against him "should be dismissed for lack of personal involvement and failure to state a claim." *Id.* at 7. The Defendants also argue that they have qualified immunity and Eleventh Amendment immunity from Gregory's claims. *Id.* at 9–10. Finally, they argue that Gregory's request for injunctive relief should be denied. *Id.* at 10.

**I.   Gregory has demonstrated the existence of a genuine issue of material fact on his claim of deliberate indifference.**

Title 42 U.S.C. § 1983 provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, which is proscribed by the Eighth Amendment because its prohibition against cruel and unusual punishment embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Jackson v. Bishop*, 404 F.2d 571, 579 (8th Cir. 1968). Deliberate indifference to medical needs only amounts to an Eighth Amendment violation if the prisoner's needs are serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–104). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

"Deliberate indifference is an extremely high standard to meet. . . . [T]he plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346. "Medical records of sick calls, examinations, diagnoses, and medications *may* rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193–95 (5th Cir.1993)) (emphasis added).

To prove an Eighth Amendment violation, a prisoner must (1) "prove objective exposure to a substantial risk of serious harm" and (2) "show that prison officials acted or failed to act with deliberate indifference to that risk." *Gobert*, 463 F.3d at 345–46. Under the second, subjective prong, "a prison official acts with deliberate indifference 'only if (A) he knows that inmates face a substantial risk of serious bodily harm and (B) he disregards that risk by failing to take reasonable measures to abate it.'" *Id.* at 346 (quoting *Farmer v. Brennan*, 511 U.S. 825, 839 (1994)).

In unpublished cases, the United States Court of Appeals for the Fifth Circuit has held that a prisoner's allegation of "difficulty eating, headaches, disfigurement, severe pain, bleeding in his mouth, and blood in his stool" because the prisoner had no dentures was sufficient to state a claim of a serious medical need for dentures. *Vasquez v. Dretke*, 226 Fed. App'x 338, 340 (5th Cir. Mar. 9, 2007) (citations omitted); *see also Williams v. Mason*, 210 Fed. App'x 389, 390 (5th Cir. Dec. 14, 2006) (vacating and remanding dismissal of a deliberate indifference claim that alleged "bleeding gums and digestive difficulty, including diarrhea and cramps" due to lack of dentures); *Huffman v. Linthicum*, 265 Fed. App'x 162, 163 (5th Cir. Feb. 6, 2008) (vacating in part and remanding dismissal of a deliberate indifference claim that alleged "intense physical pain, swollen gums, weight loss, disfigurement and stomach pain" due to lack of dentures). The *Vasquez* court also noted that a doctor had recommended dentures for the prisoner plaintiff. 226 Fed. App'x at 340. Although *Vasquez* was only at the dismissal stage, the court noted that there might ultimately be no Eighth Amendment violation if the defendant doctors were unaware of the plaintiff's symptoms or came to the conclusion, in their medical judgment, that dentures would not have helped him. *Id.*

The symptoms due to a lack of dentures that Gregory alleges clearly constitute a serious medical need under Fifth Circuit case law, and the Defendants do not argue otherwise. *E.g.*

7

*Vasquez*, 226 Fed. App'x at 340. The Defendants argue only the second prong of the test for an Eighth Amendment violation, that the dental staff did not know of and disregard an excessive risk to Gregory's health or safety. ECF No. 29 at 6. They argue that Gregory's medical records show that Gregory had no problems with his oral cavity or weight loss, and therefore Gregory has no evidence of deliberate indifference. *Id.* The Defendants also argue that his stomach pain resulted not from lack of dentures but from a medication discontinued in January 2016. *Id.*; ECF No. 29-2 at 29–30. However, Gregory alleges in his complaint that he still had stomach pains when he saw Evans in February 2015. ECF Nos. 1 at 7 and 1-1 at 8.

As further proof, the Defendants attach as Exhibit A the affidavit of Benjamin Leeah, M.D., who testifies that a review of Gregory's medical records and complaint led him to the conclusion that Evans and Baucum "did not demonstrate deliberate indifference." ECF No. 29-1 at 2–6. It is unclear whether Leeah's affidavit is offered as lay witness testimony, as he states that he has personal knowledge of the facts in his affidavit; or expert witness testimony, as he states that his "opinions are based on reasonable medical probability." *Id.* Whether he is lay or expert, his conclusion that Evans and Baucum did not demonstrate deliberate indifference is a legal conclusion that he is not permitted to offer, and thus the Court will not consider it. *See, e.g., United States v. El-Mezain*, 664 F.3d 467, 511 (5th Cir. 2011) (holding that it is generally prohibited for a lay witness to give legal opinions); *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997) (holding that expert witnesses can give opinions on ultimate issues but allowing them to testify to matters of law is harmful to the jury); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) (holding that "allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant").

Contrary to the Defendants' argument, Gregory has presented evidence of deliberate indifference that conflicts with the Defendants' evidence. He averred in a sworn complaint that he submitted sick calls and had visits with Baucum and Norwood at which he complained of symptoms related to his lack of dentures. ECF No. 1 at 8–9; *see Scribner v. Linthicum*, 232 Fed. App'x 395, 396 (5th Cir. 2007) ("Contrary to the district court's conclusion that there was no competent summary judgment evidence showing that the defendant was aware of [the plaintiff's] complaints, [the plaintiff] averred in his complaint under penalty of perjury that he wrote to the defendant about his problems."). Additionally, his prior possession of dentures may indicate, per *Gobert*, that he has a serious medical need for dentures because another doctor previously prescribed them for him, though it is unclear whether they were prescribed for the specific symptoms of which he complains. *See* 463 F.3d at 345 n.12.

The Defendants state that Gregory has no evidence, when what they mean is that he has no documentary evidence in the form of medical records, which are prepared and held by the Defendants. *See Murrell v. Bennett*, 615 F.2d 306, 310–11 (5th Cir. 1980) (reversing summary judgment because "[i]ndigent prisoners are hampered in their access to the proof necessary to ward off summary judgment" and thus "the magistrate and district court should have done more before entering summary judgment"). The Defendants are essentially asking the Court to credit their medical-record evidence instead of Gregory's testimonial evidence, but the trial court's function at the summary judgment stage is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242–43 (1986). By arguing that their evidence "show[s] to the contrary" of Gregory's, the Defendants have admitted the existence of a genuine issue for trial. *See* ECF No. 29 at 6.

**II.     Summary judgment should be granted to Norwood as Gregory has not provided evidence that Norwood was personally involved in the alleged constitutional violation.**

Norwood is the medical administrator of the Allred Unit. ECF Nos. 1 at 3 and 29 at 1. Gregory accuses Norwood of deliberate indifference because Norwood is "directly responsible for medical and dental unit policies." ECF No. 1 at 3. "A supervisory official may be held liable under § 1983 only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Gates v. Texas Dept. of Protective & Regulatory Services*, 537 F.3d 404, 435 (5th Cir. 2008) (citing *Baker v. Putnal*, 75 F.3d 190, 199 (5th Cir. 1996)).

Gregory does not contend that Norwood affirmatively participated in the alleged indifferent treatment, nor has he stated what medical or dental policy of Norwood's violates the Constitution. The only fact that Gregory alleges in his case against Norwood is that Norwood signed the denial of Gregory's Step 1 claim on April 14, 2016, which does not constitute affirmative participation in his treatment. ECF No. 1 at 7. Even assuming that Baucum and Evans's treatment was the result of deliberate indifference, Gregory has made no argument and provided no facts that the alleged violation of his rights derived from a policy that Norwood implemented, nor has Gregory argued that any particular policy was unconstitutional.

The Defendants request that Norwood be dismissed with prejudice and primarily cite cases decided at the dismissal stage. ECF No. 29 at 7–8. Because their motion overall is for summary judgment and presents unexcluded materials outside of the pleadings, the Court construes their dismissal request as a request that summary judgment be granted for Norwood. *See* Fed. R. Civ. P. 12(d). Because Gregory has provided no proof that Norwood committed a constitutional violation, the Court grants summary judgment for Norwood.

**III.    The Defendants are not entitled to qualified immunity as there exists a fact issue as to whether they committed a clearly established constitutional violation.**

The doctrine of qualified immunity protects government officials from suit and "from liability for civil damages under § 1983 insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). Once an official asserts qualified immunity, the burden shifts to the plaintiff to rebut the defense. *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When determining whether an official can claim qualified immunity, courts engage in a two-step analysis. *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016). "First, they assess whether a statutory or constitutional right would have been violated on the facts alleged." *Id*. "Second, they determine whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* The Fifth Circuit requires that the law "so clearly and unambiguously prohibited the violative conduct that '*every* reasonable official would understand that what he is doing violates the law.'" *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (emphasis in original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

The objective reasonableness standard for qualified immunity and the deliberate indifference for § 1983 liability are different standards. *Thompson v. Upshur County, TX*, 245 F.3d

447, 459 (5th Cir. 2001). Behavior that constitutes deliberate indifference is relevant in determining whether the defendants' actions were objectively reasonable, but it is the plaintiff's burden to demonstrate the second step, that "all reasonable officials similarly situated would have then known that the alleged acts of the defendants violated the United States Constitution." *Id.*

The Defendants argue that they are entitled to qualified immunity because they acted in an objectively reasonable manner in their treatment of Gregory. ECF No. 29 at 9–10. But the Court found in Part I of this opinion that there is a fact issue on the question of deliberate indifference, and thus, as *Thompson* holds, there is also a fact issue on the question of whether the Defendants' actions were objectively reasonable. 245 F.3d at 459. "[C]learly established law prevents a jailer from responding to a serious medical need with deliberate indifference." *Id.* at 460. As presented in Gregory's response, and analyzed in Part 1 of this opinion, there is clearly established law that refusal to provide dentures to a patient with Gregory's symptoms can be a constitutional violation. *See* ECF Nos. 41 and 42. The Defendants are not entitled to qualified immunity.

**IV.** **The Eleventh Amendment bars claims against the Defendants to the extent they are sued in their official capacities but not in their personal capacities.**

The Defendants argue that the Eleventh Amendment bars Gregory from recovering damages, and therefore his case should be dismissed. Under the Eleventh Amendment, states may not be sued in federal court unless they unequivocally consent to the suit or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99–100 (1984). This immunity extends to state agencies and, if the relief sought would operate against the state, to state officials. *Id.* at 101. Title 42 U.S.C. § 1983 does not override the States' Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 345 (1979). The Eleventh Amendment thus shields all of the Defendants from liability to the extent that they are sued in their official capacities for damages. But the

Eleventh Amendment does not bar the recovery of damages from state officials sued for violations of § 1983 in their personal capacities. But the Eleventh Amendment does not bar the recovery of damages from state officials sued for violations of § 1983 in their personal capacities, and punitive and compensatory damages awards are common in successful § 1983 suits. *See, e.g., Smith v. Wade*, 461 U.S. 30, 34–35 (1983) (upholding an award of punitive and compensatory damages against prison officials in a § 1983 suit); *Stokes v. Delcambre*, 710 F.2d 1120, 1126 (5th Cir. 1983) (same); *Yul Chu v. Mississippi State Univ.*, 901 F. Supp. 2d 761, 773 (N.D. Miss. 2012), *aff'd*, 592 Fed. App'x 260 (5th Cir. 2014) (explicitly holding that the Eleventh Amendment does not bar monetary relief in a § 1983 suit as any relief would "impact only the individually named Defendants"). Gregory has not stated whether he requests damages from the Defendants in their personal capacities, official capacities, or both. *See* ECF No. 1 at 4. His claims for damages are viable insofar as they lie against the Defendants personally. Their argument that Eleventh Amendment immunity requires dismissal of this case is incorrect, even if Gregory had only requested monetary damages, which he did not.

## V. Injunctive relief is available to Gregory.

"Under *Ex parte Young*, 'a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law.'" *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004) (citing *Quern*, 440 U.S. at 337); *see also Ex parte Young*, 209 U.S. 123, 159–60 (1908). Injunctive relief is available in deliberate indifference cases. *See Farmer v. Brennan*, 511 U.S. 825, 845 (1994) (noting that prospective injunctive relief is available for the remedying of unsafe, life-threatening conditions); *Ball v. LeBlanc*, 792 F.3d 584, 598 (5th Cir. 2015) (upholding the granting of an injunction, though not its scope, on a prison for exposing inmates to extreme temperatures). The Prison Litigation

Reform Act (PLRA) requires that injunctive relief awarded to a prisoner "is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation." *Ball*, 792 F.3d at 598 (citing 18 U.S.C. § 3626(a)(1)(A)).

Defendants argue that Gregory is not entitled to injunctive relief on his claim. ECF No. 29 at 10–12. The Defendants additionally argue that this Court should apply the more stringent standard of the preliminary injunction in Gregory's case, particularly the requirement that there must be a substantial likelihood the requesting party will prevail on the merits. ECF No. 29 at 11 (citing, e.g., *Sugarbusters v. Brennan*, 177 F.3d 258, 265 (5th Cir. 1999)). Because Gregory has not requested a preliminary injunction, the Court will not apply that standard.

Injunctive relief is available to Gregory in his case for deliberate indifference. Injunctive relief should not in fact be an uncommon form of relief in cases of deliberate indifference, because it is likely to be the only form of relief that will stop an ongoing constitutional violation. If the fact finder ultimately finds that the Defendants were deliberately indifferent to Gregory's medical needs, then the fact finder will determine whether injunctive relief is warranted and what form that injunctive relief should take, subject to the requirements of the PLRA. This Court cannot deny Gregory injunctive relief as a matter of law at the summary judgment stage.

## CONCLUSION

After considering the pleadings and applicable law, the Court **DENIES** Defendants' Motion for Summary Judgment as to Defendants John Baucum and Nancy Evans, and **GRANTS** Defendants' Motion for Summary Judgment as to Defendant Tommy Norwood. Plaintiff's claims against Defendant Tommy Norwood are hereby **DISMISSED with prejudice**.

It is so **ORDERED** on February 2, 2018.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE